IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| Ronald Mayhew and John Mayhew,<br><br>                Plaintiffs,<br><br>v.<br><br>ILA Local 1771 (Clerks & Checkers),<br>David B. Hogan, individually and as<br>President of Local 1771, Robert Stripling,<br>individually and as Treasurer of Local 1771,<br>Richard Heiterer, the South Carolina<br>Stevedores Association and the Joint<br>Seniority Board of Local 1771 ILA/SC<br>Stevedores Association,<br><br>                Defendants. | C.A. No. 2-05-01558-PMD<br><br>**<u>ORDER</u>** |

       This matter is before the Court upon two separate motions to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. The first motion, filed by Defendants ILA Local 1771 ("Local 1771") and South Carolina Stevedores Association ("SCSA"), requests dismissal of Plaintiffs' Complaint against Defendant Joint Seniority Board of Local 1771 and SCSA ("Joint Seniority Board" or "Seniority Board"). The second motion, filed by Defendants Local 1771, David B. Hogan ("Hogan"), Robert Stripling ("Stripling"), and Richard Heiterer ("Heiterer"), requests dismissal of the causes of action set forth in paragraphs 46, 48, and 49 of Plaintiffs' Complaint, Plaintiff John Mayhew's claim for relief asserted in paragraph 50 of the Complaint, and Plaintiffs' claim for money damages from Defendants Hogan, Stripling, and Heiterer pursuant to Section 301 of the National Labor Relations Act ("NLRA"). For the reasons set forth below, the Court grants Defendants' Motion to Dismiss the Complaint against Joint Seniority Board and grants in part and denies in part Defendants' Motion to Dismiss certain specified causes of action.

# BACKGROUND

## I. Nature of the Case

On June 1, 2005, Plaintiff Ron Mayhew and his son, John, both members of the International Lonshoremen's Association ("ILA") and its local organization, Local 1771, filed their Complaint in this Court against Defendants alleging violations of rights guaranteed to them under the Labor Management Reporting and Disclosure Act ("LMRDA"), 29 U.S.C.A. § 401-531, and the Labor Management Relations Act ("LMRA"), 29 U.S.C.A. § 141-197. Specifically, Plaintiffs allege that Defendants Local 1771, Hogan, Stripling, and Heiterer violated: (1) their rights to free speech under section 101(a)(2) of the LMRDA; (2) Ron Mayhew's right to examine and inspect union records in violation of section 201(a)( c) of the LMRDA; and (3) their equal rights and privileges under section 101(a)(1) of the LMRDA. Plaintiffs also allege that the union violated John's right to fair representation and that such violation, along with the conduct of SCSA, violated his right to the protection afforded to him by the collective bargaining agreement ("CBA") between Local 1771 and SCSA.

## II. Facts

### 1. Ron Mayhew

Plaintiff Ron Mayhew is a longtime employee of Local 1771. He has worked as a clerk and checker for more than 25 years. In March of 2003, Ron was elected Vice President of Local 1771. During his tenure, he became aware of a settlement that had been reached between Local 1771 and Stevens Shipping & Terminal Company ("Stevens") for violation of the CBA between Local 1771 and SCSA. The settlement required Stevens to pay the equivalent of 36 days of work, or 288 hours of pay, to employees who would have worked but for the violation of the CBA. Pursuant to past

port practice, Stevens was required to pay these funds according to the "next man out" on the list of employees who did not work as a result of the CBA violation. The union provided Stevens with a list of payee employees, and Stevens paid the employees identified on the list. However, having learned that funds were not paid to certain employees who were entitled to receive pay, Ron requested verbally and in writing to review certain documents evidencing the receipt and disbursements of the settlement. Ron made these requests to President of Local 1771 David Hogan, members of Local 1771's Executive Board, and William J. Bean, Vice President of the SCSA and Port Manager of Stevens Shipping Company. When he asked Treasurer Stripling to see these documents, Stripling responded, "How far are you planning to take this?" Additionally, Ron claims that President Hogan and another executive board member of Local 1771 told him that if he persisted in seeking review of the records then his son, John, would be hurt. Ultimately, Ron was not permitted to review the records; Local 1771 advised Ron that his request was untimely and the documents were exclusively in the hands of the employer.

Thereafter, a series of grievances and counter-grievances followed. For instance, President Hogan filed internal union charges against Ron, alleging that he tried to get special favors for his son and engaged in conduct that was detrimental to the union, among other charges. On December 16, 2003, the Executive Board of Local 1771 voted to remove Ron as Vice President for missing three successive meetings. No notice was given to Ron and no opportunity as provided by Article 17 of the Local Constitution and By-Laws. Ron sent a letter to Treasurer Stripling explaining his absences and complaining that he had not been notified of the Board's actions.

On January 15, 2004, the Executive Board issued its ruling regarding the grievances filed by President Hogan against Ron, finding among other things that Ron should be removed from

office because he owned stock in a company as prohibited by the International Longshoremen's Association's Constitution. At each board meeting regarding the grievances filed by President Hogan, Ron complained that the makeup of the Executive Board violated his right to a fair hearing pursuant to 29 U.S.C. 411(a)(5)(c) because all but one of the members of the Board were accused of having knowledge about the missing records or were aware of the threats made to Ron. Additionally, Ron complained that the attorney appearing at the grievance hearing for Local 1771 had not been properly hired pursuant to Article 13 of the Constitution and By-Laws of Local 1771 and that the presence of an attorney at a grievance hearing had never been allowed before. The Board denied Ron's request to have the attorney removed from the hearing. Ron appealed the Board's decision to remove him from office, and the Executive Board of the ILA ultimately concluded that Ron had been improperly removed from office. However, after reinstatement, Ron was again removed from office; he was never reelected to office. Ron claims that his improper removal from office constitutes a form of discipline in violation of 29 U.S.C. § 411 of the LMRDA.

### 2. John Mayhew

Ron Mayhew's son, John, has worked as a casual laborer through the hiring hall of Local 1771 since 1999. When John started working as a casual, the rules allowed him to miss six strikes in a month or 24 in a year before being sanctioned or removed from the casual list of rotation. However, during John's second year of service, his group of casuals was combined with the recently hired Newspaper Group. Individuals in the Newspaper Group work under the terms of a Seniority Agreement negotiated between Local 1771 and SCSA, which provides: "A failure to accept three (3) calls in any one month or twelve (12) calls in a contract year will result in your removal from the rotating list."

On January 22, 2004, John's father, Ron filed a grievance with the National Labor Relations Board ("NLRB"), alleging that since some time around August 1, 2003, Local 1771, by and through its officers, agents, and representatives, restrained and coerced its members by refusing to allow John Mayhew to be employed in accordance with the seniority provisions of the local union. The NLRB required Local 1771 to post the rights of each union member in a conspicuous place for 60 days.

In the summer of 2004, John's father, Ron, went on vacation for about three weeks. During this time, John was afraid to work because of the threats that had been made against him. Thus, John incurred excessive absences and received a letter stating that he was being removed from the rotating list of casuals. On August 3, 2004, John, along with several other members of his group, received notice of their termination due to excessive absences pursuant to the Seniority Agreement of the Joint Seniority Board. All of the terminated casuals asked for and received a hearing regarding their termination. All of the casuals except for John Mayhew were reinstated.

On November 8, 2004, John went before the Seniority Board in an attempt to be reinstated. President Hogan, a member of the Seniority Board, asked to represent John before the board and promised to provide medical records for John's absences. However, such medical records did not exist and were not necessary for his reinstatement; John had no medical condition prohibiting him from employment. Rather, the reason underlying his excessive absences was his fear of harm resulting from the threats he had received from Local 1771. John alleges that President Hogan and Local 1771 failed to provide him with fair and adequate treatment and failed to provide fair representation to him before the Seniority Board.

On or about April of 2005, John was permanently banned from employment with the union,

5

and he believes that this ban is in violation of the Seniority Plan which allows for a three-day suspension from employment for a first offense violation of the employment rules rather than a complete ban from ever working as a clerk and checker. Also, John believes that the CBA dated March 5, 2002, was so vague in its criteria for continued employment that it allowed discriminatory application against him in that he was permanently removed from the rotating list of casuals while others similarly situated were reinstated by the Board.

## STANDARD OF REVIEW

Rule 12(b) provides that "[a] motion making any [Rule 12(b)]defenses shall be made before pleading if a further pleading is permitted." Fed. R. Civ. P. 12(b). However, Rule 12(h)(2) provides that the defense of failure to state a claim upon which relief can be granted as set forth in Rule 12(b)(6) may be raised "by motion for judgment on the pleadings, or at the trial on the merits." Fed.R.Civ.P.12(h)(2); *see also* 5A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1367 at 514-15 (2d ed.1990). Therefore, as a matter of motions practice, Defendants' Motions to Dismiss should be viewed as a Rule 12(c) motion for judgment on the pleadings raising the defense of failure to state a claim upon which relief can be granted. *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999) (citing *Republic Steel Corp. v. Pennsylvania Eng'g Corp.,* 785 F.2d 174, 182 (7th Cir.1986)). However, viewing Defendants' Motion as a 12(c) motion does not have a practical effect on our standard of review at this juncture, and thus, we apply the standard for a 12(b)(6) motion.

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a motion to dismiss for failure to state a claim should not be granted "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45-

46 (1957); *see also Edwards,* 178 F.3d at 244 ("[A] Rule 12(b)(6) motion should only be granted if, after accepting all well-pleaded allegations in the plaintiff's complaint as true and drawing all reasonable factual inferences from those facts in the plaintiff's favor, it appears certain that the plaintiff cannot prove any set of facts in support of his claim entitling him to relief."); *Mylan Labs., Inc. v. Matkari,* 7 F.3d 1130, 1134 (4th Cir.1993) ("In considering a motion to dismiss, the court should accept as true all well-pleaded allegations and should view the complaint in a light most favorable to the plaintiff."). Further, "[u]nder the liberal rules of federal pleading, a complaint should survive a motion to dismiss if it sets out facts sufficient for the court to infer that all the required elements of the cause of action are present." *Wolman v. Tose*, 467 F.2d 29, 33 n. 5 (4th Cir.1972).

## ANALYSIS

**I.     Motion to Dismiss Joint Seniority Board of Local 1771 and SCSA as a Defendant**

Section 412 confers federal subject matter jurisdiction on suits by persons whose statutory rights are infringed by a "labor organization." Section 402(i) states:

> "Labor organization" means a labor organization engaged in an industry affecting commerce and includes any organization of any kind, any agency, or employee representation committee, group, association, or plan so engaged in which employees participate and which exists for the purpose, in whole or in part, of dealing with employers concerning grievances, labor disputes, wages, rates of pay, hours, or other terms or conditions of employment, and any conference, general committee, joint or system board, or joint council so engaged which is subordinate to a national or international labor organization, other than a state or local central body.

29 U.S.C.A. § 402(i). In the present case, Defendants Local 1771 and SCSA move to dismiss Defendant Joint Seniority Board from Plaintiffs' suit, alleging that the Joint Seniority Board is not

7

a "labor organization" under the LMRDA.[1]  Plaintiffs disagree and argue that "[g]iven the function of the Board and its clearly defined purpose, the Seniority Board functions in all respects as a labor organization."  (Pl. Response in Opp. to Mot. at 3.)

In their Motion to Dismiss, Defendants claim that the Joint Seniority Board is "simply a means by which Local 1771 (a labor organization under the LMRDA) and the SCSA (an employer under the LMRDA) engage in the collective bargaining function of interpreting and implementing Article 14 of the [collective bargaining agreement]."  (Def. Mot. to Dismiss at 5) (internal citations omitted).  Defendants assert that the central statutory element necessary to establish that an entity is a "labor organization" – that the organization "deals with employers" with respect to labor relations matters – is not present because the Joint Seniority Board does not "deal with" any employers within the meaning of the statute.  Additionally, Defendants assert that the Joint Seniority Board is not "engaged in an industry affecting commerce," as defined in the LMRDA.  *See* 29 U.S.C. § 402(i) (stating that for an entity to be engaged in an industry affecting commerce, it must fall into one of five categories set forth in the statute).[2]

---

[1] In fact, Defendants contend that the Seniority Board is not a legal entity capable of being sued because it acts only on behalf of its constituent member entities – Local 1771 and SCSA.

[2] Pursuant to the statute:

A labor organization shall be deemed to be engaged in an industry affecting commerce if it –

**(1)** is the certified representative of employees under the provisions of the National Labor Relations Act, as amended [29 U.S.C.A. § 151 et seq.], or the Railway Labor Act, as amended [45 U.S.C.A. § 151 et seq.]; or

**(2)** although not certified, is a national or international labor organization or a local labor organization recognized or acting as the representative of employees of an employer or employers engaged in an industry affecting commerce; or

In their Memorandum in Opposition to Defendants' Motion to Dismiss the Joint Seniority Board, Plaintiffs assert that the Seniority Board "deals with employees on behalf of the employers represented by the SCSA" and within the definition of "labor organization" under the LMRDA. (Pls.' Mem. in Opp. to Defs.' Mot. to Dismiss at 2, 3.)  The CBA between Local 1771 and SCSA sets forth an employee hiring plan based upon seniority.  The parties to the CBA refer all decisions regarding the hiring and firing of employees to the Joint Seniority Board which is made up of equal members of Local 1771 and SCSA.[3]  The decisions of the Joint Seniority Board as to employment

> **(3)** has chartered a local labor organization or subsidiary body which is representing or actively seeking to represent employees of employers within the meaning of paragraph (1) or (2); or
>
> **(4)** has been chartered by a labor organization representing or actively seeking to represent employees within the meaning of paragraph (1) or (2) as the local or subordinate body through which such employees may enjoy membership or become affiliated with such labor organization; or
>
> **(5)** is a conference, general committee, joint or system board, or joint council, subordinate to a national or international labor organization, which includes a labor organization engaged in an industry affecting commerce within the meaning of any of the preceding paragraphs of this subsection, other than a State or local central body

29 U.S.C.A. § 402(j)(1)-(5).

[3]  "The Charleston Clerks and Checkers Seniority Plan is a product of the collective bargaining relationship between the South Carolina Stevedores Association, Inc., a multi-employer bargaining group, and Local 1771, Clerks and Checkers of the International Longshoremen's Association."  (Defs.' Exhibit 2 at 1.)  The Plan states:

> The managing of this Seniority Plan shall be governed by a Seniority Board consisting of (2) members from ILA Local 1771 and (2) Employer representatives. ILA Local 1771 Board members shall consist of the President of ILA Local 1771 and (1) Executive Board member or (1) Seniority Committee member.  The employers Board members shall consist of the Charleston Employers' representative on the District Negotiating Committee and one other representative chosen by the employers who are party to the Charleston Longshore Agreement or two representatives of employers who are party to the Charleston Longshore Agreement.

issues are final and binding. (Defs.' Exhibit 2 at 3.) In the event that the board is unable to reach agreement, the matter is resolved under the procedures established in clause 15(B) of the Clerks and Checkers Agreement. (Defs.' Exhibit 2 at 3.)

Defendants filed a reply to Plaintiffs' Memorandum in Opposition, in which they contend that the Seniority Board is not a labor organization under the LMRDA because it "is not a free-standing labor organization comprised of employee-members, but it is instead an entity comprised of two other entities – an admitted labor organization (Local 1771) and an employer organization (the SCSA)." (Defs.' Reply to Pls.' Opp. at 2.) The Court agrees.

In this case, neither party has cited and the Court did not locate any decision finding that an organization such as the Joint Seniority Board – comprised of both employee representatives and representatives of a separate multi-employer bargaining group – constitutes a labor organization within the meaning of 29 U.S.C.A. § 402(i).[4] Although Congress phrased the statutory definition

---

(Defs.' Exhibit 2 at 2.)

[4] Plaintiffs cite *NLRB v. Cabot Carbon Co.*, 360 U.S. 203 (1959) and *Electromation, Inc. v. NLRB*, 35 F.3d 1148 (7th Cir. 1994). Both of these cases arise under the National Labor Relations Act, ("NLRA") 29 U.S.C. § 152(5). In *Cabot Carbon Co.*, the Supreme Court held that company dominated employee committees which existed for the purpose of dealing with employers concerning conditions of work were within the NLRA, notwithstanding that such committees did not bargain with employers in the usual concept of collective bargaining. Specifically, the Court considered the meaning of the phrase "dealing with" and determined that nothing in the plain words of the statute, its legislative history, or in the relevant case law supported the conclusion that "dealing with" meant "bargain with." *Id.* at 210. Because the *employee committees* in *Cabot Carbon Co.* made requests and proposals concerning matters such as wages, schedules, and improvement of working facilities, the Court concluded that they existed for the purpose of dealing with the employer. *Id.* at 213. In *Electromation, Inc.*, the Seventh Circuit Court of Appeals found that the activities of certain action committees constituted "dealing with" the employer, consistent with *Cabot Carbon Co.* 35 F.3d at 1161.

Ultimately, the Court believes that these two cases do not support Plaintiffs' contention that the Joint Seniority Board is a labor organization that "deals with" employers concerning working conditions. The fact remains that the Joint Seniority Board in this case is not made up of employees

10

of "labor organization" very broadly, a review of the record indicates that the Joint Seniority Board does not exist for the purpose of dealing with the employer of its members. Rather, the Seniority Board arises as a product of the CBA between Local 1771 and SCSA, and it does not interact with management for any purpose other than to make final and binding decisions in accordance with the Seniority Plan. Thus, the Seniority Board is not an organization "in which employees participate" for the purpose of "dealing with employers" concerning labor-related matters; it is an organization made up of two Local 1771 employees *and* two representatives of a *separate* entity, SCSA. Also, it does not constitute a joint board subordinate to a national or international labor organization because it is not merely a board of employees subordinate to a national or international labor organization, but rather, it is a board made up of members of two separate entities. Accordingly, the Court is of the opinion that the Joint Seniority Board is not a "labor organization" as defined in 29 U.S.C. § 402(i), and therefore, Defendants' Motion to Dismiss the Joint Seniority Board is granted.

---

for the purpose of dealing with the employer of its members on matters such as wages, schedules, and general working conditions. Rather, the Seniority Board is an entity made up of both employee representatives and SCSA representatives pursuant to the CBA between Local 1771 and SCSA.

## II.     Union Defendants' Motion to Dismiss Certain Causes of Action[5]

### 1.     Cause of Action Alleging Violation of the National Labor Relations Act

Defendants move to dismiss the cause of action in paragraph 50 of Plaintiffs' Complaint.[6] Defendants assert that exclusive jurisdiction for the adjudication of unfair labor practices under the National Labor Relations Act ("NLRA"), 29 U.S.C. § 158(b), rests with the National Labor Relations Board ("NLRB").  Plaintiffs disagree and claim that the Court has jurisdiction over their cause of action alleging violation of the NLRA.

In *Vaca v. Sipes*, the Supreme Court determined whether exclusive jurisdiction rested with the NLRB in a union member's action against officers and representatives of his union for wrongfully discharging him in violation of a collective bargaining agreement and arbitrarily refusing to arbitrate his grievance.  386 U.S. 171, 172 (1967).  The Court found that the state court had jurisdiction and that such jurisdiction was not preempted by the NLRA even though the conduct of an employer may also be an unfair labor practice within the jurisdiction of the NLRB.  *Id.* at 172, 183-84.  In so finding, the Supreme Court noted that "[t]here are also some intensely practical considerations which foreclose pre-emption of judicial cognizance of fair representation duty suits, considerations which emerge from the intricate relationship between the duty of fair representation

---

[5] Plaintiffs agreed with Defendants to dismiss the causes of action set forth in paragraphs 46 and 49 of their Complaint and to dismiss their claim for money damages from individual officers of Local 1771 pursuant to 29 U.S.C. § 185.  Accordingly, the Court grants Defendants' Motion to the extent agreed to by Plaintiffs and does not address those causes of action in this Order.

[6] Paragraph 50 of Plaintiffs' Complaint states: "The aforesaid acts and conduct of the Defendants in threatening to deprive John Mayhew of employment with Local 1771 violated Plaintiffs [sic] rights under 29 U.S.C. 158(a) and (b) (National Labor Relations Act); constitutes a violation of Section 29 U.S.C. 401(c); and has a chilling effect on Plaintiffs [sic] rights under section 29 U.S.C. 411(a)(2)."

12

and the enforcement of collective bargaining contracts." *Id*. at 183. Accordingly, the Court believes that it may exercise jurisdiction over Plaintiffs' claim to the extent Plaintiffs assert a violation of the judicially created duty of fair representation under section 301 of the LMRA. *See Breininger v. Sheet Metal Workers Int'l*, 493 U.S. 67, 68 ("Independent federal-court jurisdiction exists over fair representation claims because the duty of fair representation is implied from the NLRA's grant of exclusive representation status to unions, such that the claims 'aris[e] under a[n] Act of Congress regulating commerce' within the meaning of 28 U.S.C. § 1337(a), the pertinent jurisdictional provision."). However, to the extent Plaintiffs assert that Defendants' conduct constitutes an unfair labor practice pursuant to section 8(b)(1)(A) of the NLRA, this Court must defer to the exclusive competence of the NLRB. Accordingly, to the extent Plaintiffs assert a fair representation claim, this Court has jurisdiction and Defendants' Motion is denied; however, to the extent Plaintiffs allege an unfair labor practice pursuant to 8(b)(1)(A) of the NLRA, this Court does not have jurisdiction and such a claim must be dismissed.

  **2. Cause of Action Alleging that Defendants Violated Plaintiffs' Rights Under Section 101(a)(5) of the LMRDA**

In paragraph 48 of their Complaint, Plaintiffs allege that "[t]he aforesaid acts and conduct of certain of the Defendants, individually and/or collectively in failing to provide an impartial hearing deprived Plaintiffs of their due process rights under LMRDA, 29 U.S.C. 411, Section 101(a)(5)." This section of the LMRDA provides safeguards against improper disciplinary action and states: "No member of any labor organization may be fined, suspended, expelled, or otherwise disciplined except for nonpayment of dues by such organization or by any officer thereof unless such member has been (A) served with written specific charges; (B) given a reasonable time to prepare

his defense; (C) afforded a full and fair hearing." 29 U.S.C.A. § 411. Defendants claim that because neither party was entitled to a hearing under this provision, this cause of action must be dismissed.

First, Defendants contend that Ron's claim is moot because the ILA's Executive Board reversed Local 1771's decision to remove him from office. However, even if this claim is not moot, Defendants assert that Ron Mayhew was not subject to "discipline" within the meaning of Section 101(a)(5) of the LMRDA because that section does not apply to removal or suspension from office. *See Gabauer v. Woodcock*, 520 F.2d 1084, 1093 (8th Cir. 1975) ("[T]he cases are virtually unanimous that s[ection] 101(a)(5) does not apply to removal or suspension, even when done summarily, from union office unless union membership rights are denied.") (citing *Martire v. Laborers' Local 1058*, 410 F.2d 32, 35 (3d Cir. 1968); *Intern'l Ass'n of Machinists v. King*, 335 F.2d 340, 342-43 (9th Cir. 1964); *Airline Stewards v. Transport Workers*, 334 F.2d 805, 808-09 (7th Cir. 1964)).

In response, Plaintiffs state that although the ILA Executive Board reinstated Ron, he never resumed office because Local 1771 never allowed him to resume his office. Additionally, Plaintiffs assert that Local 1771's conduct "violated his and all of the other members of the union their rights *under Section 101(a)*." (Pls.' Mem. in Opp. to Defs.' Mot. to Dismiss at 5.) (emphasis added). However, Defendants' Motion to Dismiss addresses only the cause of action asserted in paragraph 48 of Plaintiffs' Complaint, and therefore, the Court considers *only* whether Plaintiffs can state a cause of action pursuant to section 101(a)(5), as asserted in paragraph 48.

In their Motion to Dismiss, Defendants present a simple scenario whereby the only issue covered by this cause of action is Ron's removal from office. H

owever, in the Complaint, Ron asserts that at each of the Executive Board hearings regarding the

14

various grievances filed against him, he was denied the right to a fair hearing pursuant to section 101(a)(5). (Pls.' Cmpl. ¶ 29.) Although the Court believes that Ron's removal from office does not in itself constitute "discipline" within the meaning of section 101(a)(5), because paragraph 48 of the Complaint seems to encompass more than Ron's removal from office, the Court is unable to find at this pleading stage that "no relief could be granted under any set of facts that could be proved consistent with the allegations." *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984). Accordingly, Defendants' Motion to Dismiss is denied with respect to Ron's claim.

Additionally, Defendants assert that John Mayhew also was not "disciplined" within the meaning of section 101(a)(5) of the LMRDA. Specifically, Defendants claim that John does not assert that Local 1771 subjected him to formal internal union discipline of any kind for violation of any provision of Local 1771's governing documents, and he also does not assert that his membership rights were reduced or diminished in any tangible way. Rather, John asserts that he was wrongfully terminated from employment by the Joint Seniority Board.

In support of their Motion to Dismiss, Defendants cite *Breininger v. Sheet Metal Workers Intern'l Ass'n, Local Union No. 6*, where the Supreme Court found that a union member had not alleged a violation of sections 101(a)(5) and 609 where the petitioner alleged only that two officers failed to refer him for employment due to a personal vendetta. 493 U.S. 67, 94 (1989). Plaintiffs attempt to distinguish *Breininger* and ultimately claim that John was arbitrarily punished and deprived of his right to work and that such punishment was authorized by the union as a "collective entity to enforce its rules." *Id*. at 91. Defendants claim that any punishment imposed on John Mayhew was generated not by Local 1771 but rather by the Joint Seniority Board, and accordingly, this cause of action should be dismissed.

Ultimately, as with Ron's claim, the Court should dismiss this cause of action only "if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Hishon*, 467 U.S. at 73. In light of the aforementioned and accepting all well-pleaded allegations as true, the Court believes that it would be premature to grant Defendants' Motion with respect to both Ron's claim and John's claim at this stage.

## CONCLUSION

It is, therefore, **ORDERED**, for the foregoing reasons that Defendants' Motion to Dismiss the Joint Seniority Board as a Defendant is **GRANTED**; Defendants' Motion to Dismiss certain specified causes of action is **GRANTED IN PART** and **DENIED IN PART** as is consistent with this Order.

**AND IT IS SO ORDERED**.

PATRICK MICHAEL DUFFY
United States District Judge

**Charleston, South Carolina**
**November 15, 2005**